1   I mean, I don't mind if you want to put that in front of

2   her, and maybe you want to mark that anew.

3           MS. GEATHERS:  Yes, let me have you mark that

4   first and then I'll have it copied.

5           (Thereupon, the reporter marked Informal

6   Counseling for identification as Deposition Exhibit N.)

7       Q   (By Ms. Geathers) Just so we can get those

8   hours straight, we're looking at now the written version or

9   unclean version of Exhibit 10?

10      A   Okay.

11      Q   And it's dated June 8, '04?

12          MS. GARDNER:  Which is now Defendant's Exhibit

13  N.

14      Q   (By Ms. Geathers) Okay.  So your writing here

15  -- You have some writing here and I guess you're

16  referencing September 6th and September 7th.  And you have

17  in writing "same occasion and same reason, food poisoning."

18      A   Yes.

19      Q   But 9/6 says 8.0 hours, and 9/7 says 1.5 hours?

20      A   Yes.

21      Q   I can't read your writing that is to the right?

22      A   Yes.

23      Q   What does that say?

24      A   It says, "Was not out all day.  These hours

25  are inaccurate as supervisor did not make appropriate

Page 64

1  changes."

2  Q  Okay. What is that under that?

3  A  "As required to."

4  Q  Okay. So the appropriate changes that she
5  should have made -- Well, in other words, it should have
6  been for 9/6 -- Well, tell me what are the appropriate
7  changes that it should have been?

8  A  Well, this document, from looking at it, it
9  states that I was out for the entire day of 9/6.

10  Q  Right.

11  A  And I did come in and I worked half a day on
12  that day. So that should --

13  Q  So that should be four --

14  A  I am not -- I can't tell you exactly what time
15  that I came in specifically, but I came in close to a half
16  a day on 9/6.

17  Q  Okay. But on 9/7 you have same occasion --
18  Your writing indicates "same occasion, same reason, food
19  poisoning"?

20  A  Yes.

21  Q  So is it your testimony that on 9/6 it was food
22  poisoning, and then on 9/7 it was food poisoning?

23  A  Yes, I still had the same thing.

24  Q  Okay. And did you have a medical appointment
25  as well on 9/7?

Page 66

1   A   No, it wasn't the whole day. I don't remember
2   the exact number of hours, but it was again close to a
3   little more than a half a day if I remember correctly.
4   Q   Okay. It's indicated on both Defendant's
5   Exhibit N and Plaintiff's Exhibit 11 that on 9/17 you took
6   off a day -- Well, took off a day again -- Strike that --
7   not took off a day.
8       You called in ill again, and it indicates that
9   for 9/17 the reason given was personal problems.
10  A   Initially, when I called and I left a voice
11  mail I didn't specify what the reason, the specific reason
12  was.
13  Q   Okay.
14  A   I left three voice mails that day. And --
15  Q   Well, let me back up.
16  A   Oh, I am sorry.
17  Q   No, I interrupted you but I want to put this
18  into some kind of sequence for you.
19  A   Okay.
20  Q   So on 9/17 you did, you would agree, leave your
21  supervisor Carol a voice mail in the morning?
22  A   Yes.
23  Q   Okay. Do you recall stating in that voice mail
24  that you were going to be late?
25  A   Yes.

```
 1      Q   And then at or around 3:00 in the afternoon,
 2   you left her a second voice mail?
 3      A   No, the second voice mail was left near late
 4   morning.
 5      Q   Late morning?
 6      A   Yes.
 7      Q   And what did that second voice mail state?
 8      A   The second voice mail stated that I wasn't
 9   feeling well.  But I didn't specifically say in the voice
10   mail what the reason was or leave any more detail than
11   that.  But I said that I would follow up again and I left
12   my cell phone number as I did on the first one.
13      Q   Okay.  Do you recall calling later on that
14   afternoon?
15      A   Yes.
16      Q   Okay.  And did you ultimately state -- around
17   3ish?
18      A   It was the afternoon, but it wasn't 3:00.  It
19   was before 3:00.  I do know that.
20      Q   Okay.  But you indicate -- Or do you recall
21   indicating, be it 3:00 or earlier in the afternoon --
22      A   Right.
23      Q   -- that you wouldn't be coming back to work for
24   the remainder of that day?
25      A   Yes, I do recall.
```

Page 68

1   Q   And what was the reason that you recall giving
2   for that?
3   A   On that message, I did not specifically state
4   the reason.
5   Q   You didn't?
6   A   No.
7   Q   You don't recall specifically stating that you
8   had a personal problem?
9   A   No, I didn't specifically state that on the
10  voice mail. I spoke with Carol when I came in on the
11  following day.
12  Q   So it's your testimony that you left that later
13  voice mail to simply state that you're not going to come in
14  without any explanation?
15  A   Well, because I knew that I had called three
16  times, I didn't know, you know, I had left my message and
17  she hadn't called back. And so I didn't know what the
18  circumstances were or if she was there. And I didn't know
19  who had access to, you know, her voice mail and all of
20  that. So I didn't want to leave a detailed message on her
21  voice mail.
22  Q   Okay. I am trying to figure this handwriting
23  out. Back to Exhibit -- I am going to be going back and
24  forth.
25  A   Okay.

Page 69

1      Q     Let me start with Exhibit 11, Plaintiff's

2   Exhibit 11.  "9/26," do you see that?

3      A     Yes.

4      Q     Okay.  And it says, "medical appointment," do

5   you recall having a medical appointment on 9/26?

6      A     Yes, I was actually going to the doctor on that

7   morning.

8      Q     Okay.  I am going to talk about that briefly.

9      A     Okay.

10     Q     That was the morning that -- and you can

11  correct me if I'm wrong -- but this was still the period

12  that you were in your core training.  Correct?

13     A     Yes, it was.

14     Q     And do you recall your core training being

15  cancelled that day?

16     A     Yes, it was.

17     Q     Okay.  And do you recall leaving your

18  supervisor a voice mail that day?

19     A     Yes, early that morning I did.

20     Q     Do you recall leaving your supervisor a voice

21  mail that said something along the lines that you would be

22  late because you had a doctor's appointment at 8:30?

23     A     Yes, and that I was not feeling well, yes.

24     Q     Okay.  You had not, would you agree, requested

25  time off in advance for that doctor's appointment on that

Page 70

1  day on 9/26.  Correct?
2      A    Correct.  Because I didn't -- I didn't need
3  time off because the core training started at 9:30, so....
4      Q    Now, you went to your doctor's appointment and
5  you came back to work.  Correct?
6      A    Uh-huh.
7      Q    Now, I just want to focus on 9/26/01.  Was that
8  the day that you came back from work and that you went to
9  human resources?
10     A    Yes, I spoke with Lisa Owens that day.
11     Q    Okay.  Now, on 9/26/01 -- Let me back up.
12          Did you go straight to Lisa Owens or did you go
13 to your unit first?
14     A    I believe that I went to my unit and, you know,
15 and got myself situated.  Because as I was walking past, I
16 actually walked past Lisa's office to get to my unit, and
17 so I didn't see her specifically.  I went straight to my
18 unit, but I came back to try to poke my head in and see
19 her.
20     Q    Okay.  And you did see Lisa that day?
21     A    Yes, I did.
22     Q    And at that meeting with Lisa, I believe that
23 you indicated that last week, when your attorney deposed
24 Lisa Owens, that you told her of a medical condition that
25 was affecting your ability to report to work; do you recall

Page 82

1  I didn't go to her to say, When I give you this, is that
2  one occasion or, you know, is it going to be this?  That
3  really wasn't my question.  My question was being able to
4  follow the procedure of what I needed to do to document my
5  condition.
6       Q    Okay.  And why did you need to find that out?
7       A    Because, number one, I know that being out, you
8  know -- and I am out for migraines at this point -- that it
9  should be documented.  Because I don't want to come across
10 as an employee who, you know, doesn't care or is blowing
11 work off.  I want it to be known that I'm here for a
12 reason and I do have this condition that does come up and
13 it has come up.  And so at that point, I felt that it was
14 very important to at least have somewhere in, whether it's
15 in my file or somewhere, that I have it.
16      Q    Okay.
17      A    So that I can be, I think, assessed overall
18 more appropriately and more fairly as an employee, you
19 know, in terms of understanding why I was out on this time
20 or why, you know....
21      Q    But you would agree that up until 9/26/01, you
22 would agree that you were out for more than one day?
23      A    Up until 9/26?
24      Q    Yes.
25      A    Or before 9/26/01.

Armstrong v. State of Connecticut

6/14/2004 Tiana Armstrong

Page 83

```
 1        Q    Yes, you would agree that you were absent for
 2   more than one day?
 3        A    Yes.
 4        Q    For two days?
 5        A    Are you basing it on an eight-hour day or
 6   how --
 7        Q    Yes, for eight-hour days.  For one day you
 8   would agree that you were absent?
 9        A    For one eight-hour day, yes.
10        Q    What about for two days?
11        A    Before 9/26, two eight-hour days.
12        Q    And on 9/26, for 4.0 hours?
13        A    I believe that's pretty accurate.  In my
14   recollection, it would be about that many hours.
15        Q    And then for 9/7, we're kind of gray in that
16   area.  On Defendant's N or Plaintiff's 10, for 9/7 you have
17   written "same occasion, same reason," but you can't
18   remember the actual hourly -- the breakdown between 9/6 and
19   9/7?
20        A    The actual hourly breakdown between the two --
21        Q    Yes.
22        A    -- I can't be exactly accurate right now in
23   telling you.
24        Q    Okay.  Now, on 9/26 you were given a medical
25   certificate from Lisa.  Correct?
```

Brandon Smith Reporting

10272bc4-44a2-4d28-aab7-8f2358585094

Page 92

1     A    I wouldn't agree that it was my six occasions
2  according to my understanding of an occasion.
3     Q    Okay. You were absent on 10/26/01 though.
4  Correct?
5     A    Yes.
6     Q    And this date, 10/26/01, was before DSS's
7  receipt of your medical certificate. Correct?
8     A    Yes.
9     Q    All right. And according to -- and you can
10 correct me if I am wrong -- but according to my
11 recollection of Lisa's testimony and what you testified
12 here today -- and this is my recollection and you can
13 correct me if I am wrong -- but on -- Well, 10/25 is
14 listed on your medical certificate as a date being absent.
15 And you already agreed that that was a date and 10/26.
16         Wouldn't you agree that that is where you
17 indicate that you had your migraines?
18    A    Yes, I did have migraines.
19    Q    On 10/25 and 10/26?
20    A    Yes, I did.
21    Q    Okay. And according to Plaintiff's Exhibit
22 11, it's listed as dates 10/25 and 10/26 that you had a
23 migraine on that date. Correct?
24    A    Correct.
25    Q    Okay. Was that the date, to the best of your