UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIANA ARMSTRONG,<br>*Plaintiff* | : <br>: <br>: | CIVIL ACTION NO.<br>3:02CV2264(AVC) |
| v. | : <br>: | |
| STATE OF CONNECTICUT,<br>DEPARTMENT OF SOCIAL SERVICES<br>SILVANA FLATTERY, MICHELE<br>FARIERI, RUDOLPH JONES and<br>CAROL SCHERER<br>*Defendants* | : <br>: <br>: <br>: <br>: <br>: | <br><br><br><br><br>July 12, 2004 |

## AFFIDAVIT OF LISA OWENS

I, LISA OWENS, having been duly sworn deposes and says:

1. I am over 18 years of age and believe in the obligation of an oath and have personal knowledge of the facts herein contained.

2. I am currently a Principal Personnel Officer with the Department of Social Services and am assigned to the Northern Region. At all times relevant to this action, the area to which I was assigned was called the North Central Region.

3. I have been with the State of Connecticut, Department of Social Services since October 1993.

4. I am familiar with the rules pertaining to the State Employees' Bargaining Agent Coalition (hereinafter "SEBAC").

5. Pursuant to Section 5-228-1 of the Regulations of State Agencies, "No appointment is to be made hereunder until laid-off employees eligible for re-hire and qualified for the position involved are offered reemployment.

EXHIBIT NO. 8

6. At the time Ms. Armstrong was offered the position of Social Services Trainee (hereinafter "SST"), there was a Re-Employment/SEBAC candidate eligible for re-employment for the position of Connecticut Careers Trainee (hereinafter "CCT") within the Central Connecticut area.

7. The Department of Social Services exercised its right to underfill the position. This decision resulted in not taking the individual off the SEBAC list.

8. The Department offered Ms. Armstrong the position of SST which had a target classification of Eligibility Services Worker.

9. The Department could not offer Ms. Armstrong the position as a CCT, even though she had a college degree, because the individual on the SEBAC list had preference.

10. I informed Ms. Armstrong that I was not authorized to offer the position to her as a CCT.

11. Ms. Armstrong was offered the position as an SST and she accepted.

12. Ms. Armstrong never complained to me about being hired as an SST instead of a CCT on the basis of her race.

13. Upon information and belief Ms. Armstrong never filed a complaint with the Affirmative Action Office of DSS regarding her being hired and employed as an SST rather than a CCT.

14. Some time during her CORE training, Ms. Armstrong contacted Lilly "Cookie" Marshall, a Personnel Officer in the DSS Central Office, and questioned why she was hired as an SST rather than a CCT.

15. I had no ill feelings toward Ms. Armstrong seeking advice elsewhere.

16. Subsequent to Ms. Armstrong's acceptance of the SST position, Ms. Armstrong never contacted me or my office regarding the issue of being hired as an SST rather than a CCT.

17. I was informed of Ms. Armstrong's attendance issues by her supervisor, Carol Scherer, and was asked for guidance on how to deal with the situation.

18. I was informed by Ms. Scherer that an informal counseling letter was issued to Ms. Armstrong on October 5, 2001 because of attendance issues wherein by that date she had five occasions of absence from work due to a variety of reasons.

19. Ms. Armstrong was out of work on August 31, 2001. The explanation given was the flu.

20. Ms. Armstrong missed time from work on September 6, 2001. The explanation given was food poisoning.

21. Ms. Armstrong missed time from work on September 7, 2001. The explanation given was a medical appointment due to food poisoning.

22. Ms. Armstrong missed time from work on September 17, 2001. The explanation given was a personal problem.

23. Ms. Armstrong missed time from work on September 26, 2001. The explanation given was a doctor's appointment of unspecified reasons.

24. Informal counseling occurs after five occasions of absence.

25. Ms. Armstrong stopped by my office in September of 2001 and said that she had a medical condition that prevented her from reporting to work.

26. There was no documentation on record from Ms. Armstrong at that time regarding a medical condition.

27. When the decision to drop Ms. Armstrong during her initial working test period because of poor attendance was made on 10-26-01, the only information which DSS or I had in our possession was a claim by Ms. Armstrong to me that she had a chronic medical condition.

28. Ms. Armstrong filed with my office on October 29, 2001 a medical certificate that detailed chronic migraines.

29. It was the first notice that the Department had from Ms. Armstrong that she suffered from chronic migraines.

30. Ms. Armstrong never requested an ADA accommodation.

31. At no time during her employment with DSS did Ms. Armstrong indicate that she was disabled and that she was seeking an accommodation for that handicap.

32. Ms. Armstrong was dropped from state service because of a less than satisfactory service rating based on the seriousness of her absenteeism during her initial working test period.

33. According to the contract under which Ms. Armstrong was hired, a rating of unsatisfactory in one category shall constitute a rating of less than good.

34. A non-permanent employee who has failed their initial working test period can be dropped without notice.

35. I made a recommendation by memorandum to the Director of Human Resources for DSS Rudolph Jones that Ms. Armstrong be dropped from state service due to the serious nature of her absenteeism and the unsatisfactory service rating which was based on her absenteeism

36. The final decision to drop Ms. Armstrong from state service was made by Mr. Jones.

37. I do not have the authority to drop an employee from state service without authorization from Central Office.

38. Ms. Armstrong was not dropped from state service because of her race.

39. I have read the foregoing statements and swear that they are true to the best of my knowledge and belief.

_____
Lisa Owens
Principal Personnel Officer

STATE OF CONNECTICUT    )
                        )    ss. HARTFORD
COUNTY OF HARTFORD      )

Sworn and subscribed to before me on this 23 day of July, 2004.

_____
Commissioner of the Superior Court/
Notary Public    MCE: 11-30-04