UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIANA ARMSTRONG,<br>    *Plaintiff* | :    CIVIL ACTION NO.<br>:    3:02CV2264(AVC)<br>: |
| v. | : <br>: |
| STATE OF CONNECTICUT,<br>DEPRTMENT OF SOCIAL SERVICES<br>SILVANA FLATTERY, MICHELE<br>FARIERI, RUDOLPH JONES and<br>CAROL SCHERER<br>    *Defendants* | :<br>:<br>:<br>:<br>:<br>:    July 12, 2004 |

## AFFIDAVIT OF CAROL SCHERER

I, CAROL SCHERER, having been duly sworn deposes and says:

1. I am over 18 years of age and believe in the obligation of an oath and have personal knowledge of the facts herein contained.

2. I am currently an Eligibility Services Supervisor with the Department of Social Services and assigned to the Willimantic office.

3. At all times relevant to this action, I was assigned to the Hartford office as an eligibility services supervisor and I was the direct supervisor of Tiana Armstrong when she first started with the state.

4. Ms. Armstrong was hired as an Eligibility Services Worker in August 2001.

5. It was my understanding that Ms. Armstrong during her working test period was not covered by the collective bargaining agreement.

6. In my capacity as Ms. Armstrong's supervisor, it was my responsibility to monitor her work product. That included overseeing her attendance.

EXHIBIT NO. 9

7. It became evident early in Ms. Armstrong's working test period that she took time off despite the fact that she had not accumulated any sick time.

8. Ms. Armstrong missed work on August 31, 2001. The explanation given was that she had the flu.

9. Ms. Armstrong missed time from work on September 6, 2001. The explanation given was that she was suffering from food poisoning.

10. Ms. Armstrong missed time from work on September 7, 2001. The explanation given was a doctor's appointment relative to the food poisoning.

11. I spoke to Ms. Armstrong about her attendance and that it was necessary for her to report to work.

12. At no time during my early discussion with Ms. Armstrong regarding her attendance did she inform me that she had a recurrent problem with migraine headaches.

13. I spoke with Michelle Farieri, the DSS Operations Manager who was my direct supervisor, regarding Ms. Armstrong's absences.

14. I was advised by Ms. Farieri to document all absences by Ms. Armstrong.

15. I kept specific attendance records for all employees under my direct supervisor.

16. Ms. Armstrong missed work on September 17, 2001. The explanation given was personal problems.

17. Ms. Armstrong missed time from work on September 26, 2001. She was scheduled to attend CORE (Curricula for Orientation, Reinforcement and

Enrichment) training with other new hired employees. She called that morning and said that she had a doctor's appointment. Ms. Armstrong did not request the time off in advance which is normal practice. She reported for work that day at 1 p.m.

18. An informal counseling session for attendance was held on October 5, 2001. In attendance were Ms. Armstrong, Ms. Farieri and myself.

19. Ms. Armstrong was given an informal counseling memo that day which summarized her attendance record. She was also verbally informed that day that there were services available if she needed assistance through the Employees' Assistance Program and was handed an EAP brochure.

20. Ms. Armstrong was reminded of the department's attendance and tardiness policy and was given a copy of the agency's time and attendance policy.

21. Ms. Armstrong at no time during this October 5, 2001 meeting inform either Ms. Farieri or myself that she suffered from migraine headaches.

22. Ms. Armstrong missed work on October 25, 2001. She explained to me that occasion that she was suffering from a migraine. This was the first time that she ever mentioned to me that she suffered migraines.

23. Ms. Armstrong missed work on October 26, 2001. The explanation given was a migraine headache.

24. Due to her earlier absences which were of various explanations, I contacted my direct supervisor regarding Ms. Armstrong's absence from work.

25. I was instructed prior to her being dropped from state service to prepare an interim performance appraisal for Ms. Armstrong.

26. The only assistance I received in preparing the performance appraisal was either grammatical or phraseology. It is standard operating procedure for a supervisor to receive assistance as far as wording from the personnel office.

27. I was not directed what to say on Ms. Armstrong's performance appraisal.

28. Ms. Armstrong was dropped from state service because of issues with her attendance.

29. I had no direct involvement in the decision to drop Ms. Armstrong. The final decision is made by the Human Resource Department at Central Office.

30. I never spoke with Silvana Flattery, the Regional Administrator, about Ms. Armstrong.

31. I have no ill feelings toward Ms. Armstrong.

32. Ms. Armstrong was not dismissed from state service because of her race.

33. I had no direct involvement in Ms. Armstrong being hired as a Social Services Trainee (SST) rather than a Connecticut Careers Trainee (CCT). The designation had no bearing in my dealings with Ms. Armstrong.

34. I have read the foregoing statements and swear that they are true to the best of my knowledge and belief.

_Carol A Scherer_
Carol Scherer
DSS Eligibility Services Supervisor

STATE OF CONNECTICUT    )
                        )    ss. HARTFORD
COUNTY OF HARTFORD      )

Sworn and subscribed to before me on this 15 day of July, 2004..

_[signature]_
Commissioner of the Superior Court/
Notary Public

my Commission expires 12/31/08

5