UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIANA ARMSTRONG,<br>*Plaintiff* | :<br>:<br>: | CIVIL ACTION NO.<br>3:02CV2264(AVC) |
| v. | :<br>: | |
| STATE OF CONNECTICUT,<br>DEPRTMENT OF SOCIAL SERVICES<br>SILVANA FLATTERY, MICHELE<br>FARIERI, RUDOLPH JONES and<br>CAROL SCHERER<br>*Defendants* | :<br>:<br>:<br>:<br>:<br>: | July 12, 2004 |

## AFFIDAVIT OF RUDOLPH JONES

I, RUDOLPH JONES, having been duly sworn deposes and says:

1. I am over 18 years of age and believe in the obligation of an oath and have personal knowledge of the facts herein contained.

2. I am currently employed by the Department of Social Services ("DSS") as the Director of Human Resources and have been so employed in this capacity for over seven years.

3. My duties as the Director of Human Resources include, but are not limited to, determining the appropriate level of discipline after proper steps have been conducted by supervisory and human resource officers.

4. All employees who are in their working test periods are considered at will employees.

5. There is no specific criteria as far as absences for an at-will employee. If management determines that there is a problem, a potential problem, it is

EXHIBIT NO. 12

within management's right during a working test period to separate that individual from state service.

6. The plaintiff, at the time of her dismissal from state service, was an at-will employee and not covered by the collective bargaining agreement inasmuch as she was in her working test period and not a permanent state employee.

7. An employee during their working test period does not have union rights consistent with those of permanent employees.

8. I received a memorandum from Lisa Owens, a principal personnel officer for the Northern Central Region of DSS, dated October 29, 2001 recommending that Tiana Armstrong be dropped from state service during her working test period because of attendance issues.

9. It was my duty to review the recommendation from Ms. Owens. I reviewed the material presented that illustrated Ms. Armstrong's attendance issues and concurred that she should be dropped from state service during her working test period due to her attendance problems.

10. Ms. Armstrong was dropped from state service pursuant to Article 11, Section One of the P-2 Bargaining Unit agreement that states, "The Working Test Period shall be deemed an extension of the examination process. Therefore, a determination of unsatisfactory performance during a Working Test Period shall be tantamount to a failure of the competitive examination."

11. The interim service rating of unsatisfactory was given to Ms. Armstrong pursuant to Section 5-237-1 of the Regulations of Connecticut State Agencies.

2

12. Ms. Armstrong was not given an unsatisfactory service rating because she is African-American.

13. Ms. Armstrong was not separated from state service because she is African-American.

14. Ms. Armstrong was separated from state service on the sole basis of her poor attendance and failure to follow department policy and procedure regarding attendance.

15. An employee separated from state service during his/her working test period is entitled to a Sperl Hearing regarding the dismissal.

16. A Sperl Hearing satisfies an employee's statutory right to present grievances to the employer.

17. In my capacity as director of human resources, I conducted the Sperl Hearing for Ms. Armstrong.

18. Ms. Armstrong did not identify herself as being disabled in her PER-301 Form when she was initially hired by DSS.

19. Ms. Armstrong never requested an accommodation pursuant to the ADA. At no time prior to the time it was decided to drop her from state service did Ms. Armstrong indicate to appropriate human resource personnel that she was disabled and was seeking an accommodation for that handicap.

20. I was not involved in Ms. Armstrong's hiring and do not get involved surrounding the issue of hiring off of the State Employees' Bargaining

Coalition ("SEBAC") list. There are personnel officers within the department who specialize in those areas and which I am not personally involved.

21. I did not speak with Silvana Flattery about Ms. Armstrong.

22. I did not speak with Carol Scherer about Ms. Armstrong.

23. I did not speak with Michelle Farrieri about Ms. Armstrong.

24. I did not conspire with nor was I in collusion with Carol Scherer, Michelle Farieri, Silvana Flattery, my superiors, or anyone at DSS, against Ms. Armstrong.

25. I have read the foregoing statements and swear that they are true to the best of my knowledge and belief.

_____
Rudolph Jones
Human Resources Manager
Department of Social Services

STATE OF CONNECTICUT   )
                       )   ss. HARTFORD
COUNTY OF HARTFORD     )

Sworn and subscribed to before me on this 13th day of July, 2004..

_____
Patricia McCooey
Commissioner of the Superior Court/
~~Notary Public~~

4