# PERFORMANCE APPRAISAL
## STATE OF CONNECTICUT
## DEPARTMENT OF ADMINISTRATIVE SERVICES

PER-125 REV. 2/91

**TYPE OF PERFORMANCE APPRAISAL**
- ☐ INITIAL PROBATIONARY
- ☐ ANNUAL
- ☐ PROMOTIONAL
- ☒ OTHER (Specify) Interim

| EMPLOYEE NAME | CLASS TITLE | DATE |
|---|---|---|
| Tina Armstrong | Social Services Trainee | 10/26/01 |

| DIVISION | DEPARTMENT | DATE OF LAST REVIEW |
|---|---|---|
| | DSS | None |

**INSTRUCTIONS:** Evaluate the employee on the job now being performed. Circle the dot in the space above the horizontal line which most nearly coincides with your overall judgement on each quality. The care and accuracy with which this appraisal is made will determine its value to you, to the employee and to the agency.

Consider the employee's performance since the last appraisal and show by a check (x) whether he/she has regressed, remained the same, or shown improvement in each of the qualities listed to the left.

| JOB ELEMENTS | GOOD | | | LESS THAN GOOD | | HAS IMPROVED | LITTLE OR NO CHANGE | HAS REGRESSED |
|---|---|---|---|---|---|---|---|---|
| **KNOWLEDGE OF WORK:** Consider knowledge of job gained through experience, general education specialized training. | Well informed on all phases of work. | Knowledge thorough enough to perform without assistance. | (•) Adequate grasp of essentials. Some assistance | Requires considerable assistance | Inadequate knowledge | COMMENTS | | |
| **QUANTITY OF WORK:** Consider the volume of work produced under normal conditions. Disregard errors. | Rapid worker. Unusually large production. | Turns out large volume. | (•) Average | Volume below average. | Very slow worker. | COMMENTS | | |
| **QUALITY OF WORK:** Consider neatness, accuracy and dependability of results regardless of volume. | Exceptionally accurate, practically no mistakes. | Seldom necessary to check work. | (•) Acceptable, usually neat, occasional errors or rejections. | Often unacceptable frequent errors or rejections. | Too many errors or rejections. | COMMENTS | | |
| **ABILITY TO LEARN NEW DUTIES:** Consider the speed with which employee masters new routine and grasps explanations. Consider also ability to retain knowledge. | Exceptionally quick at learning and adjusting to changed conditions. | Learns rapidly. Retains instructions. | (•) Average instruction required. | Requires a great deal of instruction. | Very slow at absorbing new routines. Poor memory. | COMMENTS | | |
| **INITIATIVE:** Consider the tendency to contribute, develop and/or carry out new ideas or methods. | Initiative resulting in frequent saving in time and money. | Resourceful, can meet and handle situations in an efficient and timely manner | (•) Shows initiative occasionally. | Rarely shows any initiative | Needs constant prodding. | COMMENTS | | |
| **COOPERATION:** Consider manner of handling work relationships. | Goes out of way to cooperate. | Gets along well with associates | (•) Acceptable. | Shows reluctance to cooperate. | Very poor cooperation. | COMMENTS | | |
| **JUDGEMENT:** Does employee think intelligently and make decisions in a logical manner. | Thinks quickly logically outstanding. | Judgement usually logical | Fairly reliable. | (•) Inclined to be illogical. | Poor, unreliable. | COMMENTS | | |

**OTHER ELEMENTS:** Consider other elements of job performance which are not included above, yet are job related, i.e. attendance, physical performance on job, supervisory ability, affirmative action responsibilities

COMMENTS

See attached narrative

*If comments pertaining to supervisory ability are appropriate, ability to delegate authority, to get work done through subordinates, and observance of personnel and affirmative action policies should be considered.*

Armstrong v. DSS
3:02CV 2264 (AVC)

EXHIBIT NO. 16

INSTRUCTIONS: Based on the appraisal you have made on the reverse side, please answer the following questions in your own words.

PER-125 REV. 2/91 (BACK)

DO YOU SEE ANY NEED FOR IMPROVEMENT ON THE PREVIOUS FACTORS? (If "YES", please explain)

☐ YES    ☐ NO

IS EMPLOYEE WELL SUITED FOR THE TYPE OF WORK BEING DONE? (If "No", indicate type of work which would appear to be more suitable)

☐ YES    ☐ NO

WHAT CONTRIBUTION HAS EMPLOYEE MADE TO DEPARTMENT, DIVISION, OR BUREAU, BEYOND NORMAL REQUIREMENTS OF POSITION?

WHAT WOULD BE YOUR OVERALL EVALUATION OF EMPLOYEE?
☐ Excellent    ☐ Good    ☐ Satisfactory    ☐ Fair    ☒ Unsatisfactory

| | SIGNATURE | TITLE | DATE |
|---|---|---|---|
| RATED BY: | Carol A Scherer | ESS | 10/26/01 |
| REVIEWED BY: | Michelle Favieri | Field Operations Manager | 10/29/01 |
| APPROVED BY: | Edward M. Flattery | RA | 11/5/01 |
| EMPLOYEE: | Barto | AFSCME | 11/5/01 |

NOTE TO EMPLOYEE: Your signature confirms that you have seen this report and discussed it with your supervisor. It does not indicate your agreement with or approval of the rating.

**QUESTIONS TO BE ANSWERED AFTER DISCUSSION OF APPRAISAL WITH EMPLOYEE**

WHAT WAS THE ATTITUDE OF THE EMPLOYEE TOWARD DISCUSSION OF APPRAISAL?

IF IMPROVEMENT IS INDICATED, WHAT SUGGESTIONS HAVE YOU MADE?

REMARKS OR ANY FURTHER COMMENTS YOU MAY HAVE FOR IMPROVEMENT

| | SIGNATURE | TITLE | DATE |
|---|---|---|---|
| CERTIFIED BY: | | | |



## Department of Social Services
## Performance Appraisal Narrative

**Employee Name:** Tiana Armstrong
**Job Title:** Social Services Trainee
**Interim Evaluation:** August 17, 2001 to October 26, 2001

**Knowledge of Work:** Tiana was hired as a Social Services Trainee effective August 17, 2001. She attended CORE training from September 24th to October 12th, 2001. In addition she has had on the job training with the unit Supervisor and Family Independence Representatives. She was assigned a Family Support caseload on October 23, 2001. The level of knowledge and the technical skills Tiana has attained to date are at the level expected after two months on the job.

**Quantity of Work:** The pace Tiana works at is acceptable for a new employee.

**Quality of Work:** The areas of Tiana's work that have been monitored up to this point have been of average quality, with occasional corrections needed. (MRF's, Husky Redts, 950 alerts, 282 alerts and PO return mail)

**Ability to Learn New Duties:** Tiana learns and applies new skills within the time frame expected for an SST.

**Initiative:** Tiana occasionally indicates when she needs help. It is too early in her employment to determine the scope of her initiative.

**Cooperation:** Tiana gets along well with her co-workers and is polite and helpful when speaking to clients.

**Judgment:** Tiana has made decisions that subsequently resulted in problems because she does not include the appropriate people in the decision-making process. For example, on the first day of employment she was told by the supervisor that she was to take a mid-morning and mid-afternoon break and asked to choose a lunch time. After conferring with a coworker from outside of the unit, Tiana decided at some point to change her break and lunch times. Core training ended on 10/12/01 and Tiana was back in DO 10 full-time beginning 10/15/01. During her first week back in the office the supervisor noticed that she was taking her breaks past the middle of the morning and lunch past the middle of her shift. On 10/18/01 the supervisor wanted to sit with Tiana and review the Redetermination process. The supervisor asked Tiana if she had taken her morning break yet. Tiana said no, she usually took her morning break at around 12:00. The supervisor reminded her that breaks are to be taken as close to the middle of the shift as possible. The supervisor then gave Tiana a copy of the P-2 Bargaining Unit Contract pages 38-39 (section four - meal periods and section five - rest periods). Tiana stated she already had a copy of the Contract. The supervisor pointed out the relevant passages in the contract and explained to Tiana that breaks should be taken from approximately 10:00 to 11:00 and between 2:30 and 3:30. Tiana was given an option of three meal periods and she chose 1:00 to 2:00 for her one-hour lunchtime (this is the same lunch

period she had chosen on her first day of employment). It was explained that due to the operating needs of the unit she must leave for and return from lunch on time unless she was tied up with a client or had approved time off. It was further explained that breaks were for 15 minutes and could not be used to extend a lunch period, to come in late or to leave early. Tiana did not inform the supervisor, ask if this was acceptable, or consider the operating needs of the unit in her decision.

The supervisor also instructed Tiana that if she had any questions about her daily work she should ask the supervisor or either of two FIR workers in the unit. The supervisor then became aware that Tiana was asking the other unit members questions. Tiana was directed not to approach the other workers in the unit with questions due to their heavy workload. She has subsequently continued to do so.

In addition, despite the fact that Tiana has been repeatedly been given instructions on Time and Attendance procedures, she has failed to adhere to the procedures. For example she failed to submit a Time Off Request prior to her absence on 9/26/01 and on various occasions of absence she failed to speak directly to the supervisor or her designee.

**Other Elements:** (Attendance and Punctuality) Tiana's attendance is unsatisfactory. From her start date of August 17th to the present she has had six occasions of absence. She did not accrue Sick Time until 9/30/01, when ten hours were posted.

1. On 8/24/01 Tiana attended the Personnel Orientation at Central Office. She was given a packet of handouts, which included the DSS Time and Attendance Policy.
2. On 8/31/01 Tiana left her supervisor a voice mail message. She stated she would be out sick with the flu.
3. On 9/1/01, upon her arrival at the office, Tiana approached Ronald Roberts, NCR Field Manager with concern about how her sick day would impact her performance. Mr. Roberts explained to Tiana the importance of good attendance, particularly as a new employee, and that she should speak to her supervisor if another occasion arose.
4. On 9/6/01 Tiana called the supervisor and stated that she thought she had food poisoning and would be out sick. She was told that this was her second occasion. She said that if she felt better later in the day she would come in to work. She did not report to work that day.
5. On 9/7/01 Tiana used 1.50 hours of Law time for a doctor's appointment.
6. On 9/17/01 Tiana left the supervisor a voice mail message stating she would be in late. She left a second voice mail message at 3:00 stating she had a personal problem and would not be coming to work for the rest of the day.
7. On 9/20/01, when the supervisor returned to work, she spoke to Tiana regarding taking time off during her six-month probationary period. It was explained to Tiana that she now had four occasions of absence, that she needed to get prior approval for non-sick time by submitting the time off request to the supervisor (634A) and that if she was calling in sick she must speak to the supervisor or whoever was covering the unit, not just leave a voice mail message. It was also explained that she had not accrued any sick or vacation time yet and would not receive personal time until January 2002. During the conversation Tiana stated that she did not want to discuss the reason for her absence on 9/17/01 with the supervisor, it was personal and something she had to do.
8. On 9/26/01 Tiana was scheduled to be at CORE training at Central Office. At 7:15 A.M. on 9/26/01 Tiana left the supervisor a voice mail message stating that CORE training had been cancelled and she would be late for work because had a doctor's appointment at 8:30. She did not request this time off in advance. She did not call back and speak to the supervisor or designee. She arrived at work at 1:00 P.M. (She did not submit the 634A until 10/4/01 when the supervisor told her that her time sheet would be considered incomplete without it. Time Sheets were due on 10/4/01.)

9. An Informal Counseling Session for attendance was held on 10/5/01. This meeting was scheduled on 10/5/01 because Tiana was at Central Office for CORE training from 9/27/01 to 10/4/01. In attendance were Tiana, Carol Scherer, Supervisor and Michele Farieri, Field Operations Manager. Tiana's attendance record was reviewed in writing and verbally. The supervisor also explained in writing and verbally that 1.) Time off (other than a sick day) must be requested in advance and in writing using the W643A (Time Off Request Form) and that this included doctor's appointments. 2.) That for sick time a phone call must be made to the supervisor or her designee no later than thirty minutes after the start of her shift. It was emphasized that she must speak directly to someone and not just leave a voice mail message. Tiana was given a list of designees for the next three months, along with their and the supervisor's start times and telephone numbers. 3.) That any time she was late for or absent from training she must report it to her supervisor or the designee following the procedures outlined above. In addition she should notify the trainer if the training session was to be held outside of this office. 4.) Tiana was informed that there are services available to her through the Employee Assistance Program (EAP). She was given an EAP brochure in case she wished to consider using this program. 5.) Tiana was informed that any additional occasions of absence might result in administrative action up to and including dismissal. 6.) Tiana was asked if she understood everything that had been said. She stated that yes she did understand. 7.) Tiana was asked if she had any questions and she stated that no she did not have any questions. She was told that if she had questions in the future regarding time and attendance she should ask her supervisor, the Field Operations Manager or Personnel. 8.) Tiana was given the Time and Attendance Policy, the EAP brochure and the written copy of the Informal Counseling-Attendance Form and the meeting was closed.

10. On 10/25/01 at 8:09 A.M. Tiana called and spoke to the supervisor. She stated that she had a migraine headache, had taken medication and would call the supervisor back later to let her know what time she would arrive at work. The supervisor informed Tiana that this was her sixth occasion of absence. Tiana said yes I know. Tiana called back at 10:33 and stated she still was not sure what time she would arrive at work. She then said she would report for work after 12:00 or call back and report if she would not be in. At 2:45 Tiana called again and stated she would not be coming to work on 10/25/01.

11. On 10/26/01 Tiana called and spoke to the supervisor. She stated that she still had a migraine headache and would be out sick for the day. The supervisor advised her that she had only two hours of sick time on the books (after her absence the day before) and that the additional six hours would be unpaid leave.

Rated By: _Carol Scherer_  Date: 10/26/01
(Carol Scherer—Eligibility Supervisor)

Reviewed By: _Michele Farieri_  Date: 10/29/01
(Michele Farieri—Field Operations Manager)

Employee: _[signature] AFSCME steward_  Date: 10/5/01
(Tiana Armstrong—Social Services Trainee)