

# STATE OF CONNECTICUT
*DEPARTMENT OF SOCIAL SERVICES*

OFFICE OF THE COMMISSIONER

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

In Re: Tiana Armstrong vs ST. of CT, DSS          Case No: 0210456
                                                   June 28, 2002

ANSWER

1. Admit

2. Admit

3. Admit.

4. Admit that Complainant attended Curricula for Orientation, Reinforcement and Enrichment (CORE) training with other new employees who were hired to work in DSS offices throughout the state

   Cannot admit or deny what Complainant alleges to have learned.

   Deny that only non-minority individuals were employed at CCT's see roster of trainees.

   Deny that the job posting states that persons with degrees "should" be hired at the CCT level. The job posting simply states the minimum requirements for each decision (Exhibit 1)

   Listed below are the attendees of the CORE training held 9-4-01 through 10-12-01 (Please See Exhibit 2).

| Employee Name | DSS Office Location | Race/Sex | Classification | Date of Hire |
|---|---|---|---|---|
| Stacy Prout | Meriden | WF | CCT | 7-23-01 |
| Travis Claxton | Meriden | BM | CCT | 7-23-01 |
| Jazmin Molina | Manchester | HF | SST | 8-24-01 |
| Tiana Armstrong | Hartford | BF | SST | 8-17-01 |
| Helena Marshall | Hartford | BF | SST | 8-24-01 |
| Dawn Cole | Hartford | BF | Promoted to SST | 8-24-01 |
| Michael Roberts | Bridgeport | OM | CCT | 9-7-01 |
| Amy Wiener | Middletown | WF | Promoted to SST | 9-24-01 |
| LaTonya Jefferson | Norwalk | BF | CCT | 8-1-01 |
| Lorilee Niles | Torrington | OF | CCT | 8-10-01 |

25 SIGOURNEY STREET • HARTFORD, CONNECTICUT 06106-5033
An Equal Opportunity / Affirmative Action Employer
Printed on Recycled or Recovered Paper

Armstrong v. DSS
3:02cv2264 (AVC)

EXHIBIT NO. 31

Tiana Armstrong
Case No: 0210456
Page 2

5.   Deny. Following the North Central Region's interview process, Ms. Armstrong was contacted by telephone and offered the position of Social Services Trainee. At that time, she was advised that there was a two-year training period requirement for the position. During the conversation, Ms. Armstrong raised the issue of being qualified for the level of Connecticut Careers Trainee because she possessed a Bachelor's Degree. At that time, it was specifically outlined to Ms. Armstrong that Respondent had authority to offer her the position of Social Services Trainee only (Please See Exhibit 3).

Ms. Armstrong accepted the position of Social Services Trainee and a letter of confirmation/acceptance was sent to her attention (Please See Exhibit 4).

Per C.G.S. Section 5-228-1(a) (Please See Exhibit 3), "No appointment is to be made hereunder until laid-off employees eligible for re-hire and qualified for the position involved are offered reemployment. At the time Ms. Armstrong was offered the position of Social Services Trainee, there was a Re-employment/ SEBAC candidate eligible for re-employment for the position of Connecticut Careers Trainee within the Central, Connecticut area (Hartford, Manchester, New Britain). The candidate would remain on SEBAC until 2-02. Respondent exercised its right to hire at the level of Social Services Trainee in order to reach candidates from outside of State service for employment. Complainant was therefore able to be offered the position of Social Services Trainee.

Admit that Complainant brought her concerns to Ms. Marshall, a Personnel Officer in Respondent's Central Office. Deny that she was told she would be reclassified retroactively to her date of hire. Rather she was advised to contact her regional personnel officer. Complainant did not contact her regional personnel officer as advised. Ms. Marshall did share Complainant's classification concerns with the appropriate Human Resources office. At that time, Ms. Marshall was reminded of the SEBAC requirements and the agency decision to fill the position at the level of SST in order to be able to offer the position to Ms. Armstrong. During the conversation, it was mentioned that it might be possible to reassign Complainant to the position of Connecticut Careers Trainee once SEBAC had been cleared. Ms. Marshall subsequently advised Complainant that she might be reassigned to the level of Connecticut Careers Trainee at some time in the future and that she should have that discussion with her regional

Tiana Armstrong
Case No: 0210456
Page 3

    human resources representative. At no time did Complainant discuss the classification issues with her Human Resources Unit, nor did she receive formal notification of reclassification from Social Services Trainee to Connecticut Careers Trainee.

6.   Deny. On 8-31-01, Complainant called and left her supervisor a voice mail message stating that she would be out sick with the flu.

    On 9-17-01, Complainant left her supervisor a voice mail message stating that she would be in late. She left a second voice mail message at 3:00 p.m. stating that she had a personal problem and would not be coming to work for the rest of the day.

    On 9-26-01, Complainant was scheduled to attend CORE training. At 7:15 a.m. on 9-26-01, she left the supervisor a voice mail message stating that CORE training had been cancelled and she would be in late for work because she had a doctor's appointment at 8:30 a.m. (Had the training not been cancelled Complainant, a new employee, would have missed this session without having obtained prior approval to do so.) Complainant did not request this time off in advance. Complainant arrived at work at 1:00 p.m. and reported directly to the Human Resources Division. At that time she advised the Human Resources Division of a medical condition that was affecting her ability to report to work and made inquiry of ways in which her related sick occasions could be counted as one occasion. She was advised to have her attending physician complete a Medical Certificate and reminded of the importance of attendance, especially during her initial working test period. She was further advised that her circumstances would be considered upon receipt of documentation from her attending physician.

    As Complainant had not gained prior approval for the unscheduled absence of 9-26-01, nor had she followed the proper call-in procedures on 9-26-01, the Human Resources Division provided her with a copy of the Agency's Attendance and Tardiness Policy where proper call-in procedures and the definition of "unscheduled absence" were outlined for her. Complainant was also advised that the unscheduled absence of 9-26-01 was technically Unauthorized Leave, however, pending receipt of verification that she attended a doctor's appointment, she was allowed to use unpaid sick leave for the absence.

7.   DENY. Ms. Tiana Armstrong was not called into the meeting and counseled regarding attendance following her complaint to Human Resources. The purpose of the meeting was to review and address ongoing problems with her attendance, since she had incurred 5 occasions of absence from her start date of August 17, 2001 through September 26, 2001. The meeting included a review of her attendance, reissuance of the attendance policy, and written confirmation of the informal counseling session. Ms. Armstrong was informed of the meeting by her supervisor, Carol Scherer, at 11:30 AM on October 5, 2001, in advance of the 3:30 PM meeting. Management was under no obligation to advise her of her right for union representation at that meeting, based upon the fact that she was not a permanent employee and, therefore, had no rights under the provisions of the bargaining unit contract.

8.   Admit with clarification. Ms. Armstrong was given a medical certificate for completion on 9-26-01. The Human Resources Division received the completed medical certificate on 10-29-01 ( Exhibit 5).

The medical certificate was signed and dated by the attending physician on 10-12-01. Dates listed on the medical certificate were 8-31-01, 9-17-01, 9-26-01 and *included 10-25-01 and 10-26-01, dates occurring after the date the attending physician signed and dated the form.* (Please refer to Item #6 of the Complaint for the explanation(s) Ms. Armstrong provided to her supervisor for the absences).

The medical certificate outlined a chronic condition "requiring treatments where it will be necessary for the employee to take work only intermittently or on a reduced schedule as a result of the condition (including for treatment described in Item 6)" (Exhibit 5). The chronic condition as outlined by Complainant's attending physician would meet Intermittent Federal Family/Medical Leave criteria and under Intermittent Federal Family/Medical Leave, the occasions could be counted as one occasion. On 10-31-02, Form HR-2 Agency Response (Exhibit 6) was sent to Complainant's home address at 6 Alford Drive, Windsor, CT 06095. Complainant claimed to not have received the HR-2, however, the form was not returned to the Agency by the United States Post Office as "undeliverable". On 11-5-01, Complainant was hand-delivered a copy of HR-2 which stated that she was ineligible for Intermittent Federal Family/Medical Leave due to the lack of 1,250 hours being worked over the previous 12 month period.

The Social and Human Services Bargaining Unit Agreement, Article 29, Section Four (b) (Exhibit 7) states, "an occasion of sick leave is defined as one continuous period of unscheduled absence for the same reasons. Further, the Agency Attendance and Tardiness Policy (Exhibit 8) states, "sporadic unscheduled periods of absence for the same reason may or may not be considered as separate occasions. In making this determination, the circumstances and/or documentation regarding the reason for the absences must be taken into consideration."

Based on Complainant's ineligibility for Intermittent Federal FMLA, it was determined that her sporadic unscheduled absences would be considered as separate occasions.

9. (Deny) Complainant reached her sixth occasion of absence on 10-26-01. This date was prior to the Agency's receipt of her medical certificate (10-29-01) (Exhibit 4). As there was no improvement in her attendance, her supervisor and manager made the recommendation to drop Complainant during her working test period on 10-26-01.

Per the Social and Human Services (P-2) Bargaining Unit Agreement, Article 11, Section One (Exhibit 9), "The Working Test Period shall be deemed an extension of the examination process. Therefore, a determination of unsatisfactory performance during a Working Test Period shall be tantamount to a failure of the competitive examination."

Due to the deficiencies in Complainant's performance in the areas of Attendance and Judgement, per C.G.S. 5-237-1 (Exhibit 10), she was issued an "Interim" Service Rating (Exhibit 11). The Service Rating was completed by Carol Scherer, Complainant's immediate supervisor. The Service Rating specifically outlined Complainant's performance deficiencies as well as the steps taken by Ms. Scherer to assist Complainant in making improvement. Complainant did not agree with the Service Rating and refused to sign it. Her union representative, Jay Bartolomei signed the service rating in her behalf.

Per the Social and Human Services (P-2) Bargaining Unit Agreement, Article 9, Section Three (Exhibit 12), "A rating of unsatisfactory in one (1) category shall constitute a rating of less than good." As stated within the Other Elements (Attendance and Punctuality) section of Complainant's service rating, her attendance was unsatisfactory which resulted in an Overall Rating of

Tiana Armstrong
Case No: 0210456
Page 6

> Unsatisfactory. Complainant's dismissal from State service during her initial working test period was based on the "Overall Evaluation" which outlined less than satisfactory (Unsatisfactory) performance in the area of Attendance and Punctuality.

10. Deny. Complainant was in her initial working test period with the Agency. Per the Social and Human Services (P-2) Bargaining Unit Agreement, Article 11, Section One (Exhibit 9), "The Working Test Period shall be deemed an extension of the examination process. Therefore, a determination of unsatisfactory performance during a Working Test Period shall be tantamount to a failure of the competitive examination." Complainant was issued an Interim Service Rating which determined her overall performance to be Unsatisfactory during her Working Test Period.

    The incumbent of the position formerly held by Complainant is a white female who was hired as a Social Services Trainee She also has a Bachelor's Degree.

Tiana Armstrong
Case No: 0210456
Page 7

## SCHEDULE A

**EMPLOYMENT**

1.  Irene C. Mason, Director
    Affirmative Action Division
    Department of Social Services
    25 Sigourney Street
    Hartford, CT 06105

2.  See affidavit response.

3.  Please See Exhibits 9, 10 & 11

4a  November 5, 2001 (Please See Exhibit 13)

4b, Due to the deficiencies in Complainant's performance in the areas of Attendance and Judgement, per C.G.S. Section 5-237-1, she was issued an "Interim" Service Rating (Exhibits 10 & 11). The Service Rating was completed by Carol Scherer, Complainant's immediate supervisor. The Service Rating specifically outlined her performance deficiencies as well as the steps taken by Ms. Scherer to assist Complainant in making improvement.

Per the Social and Human Services (P-2) Bargaining Unit Agreement, Article 9, Section Three ( Exhibit 12), "A rating of unsatisfactory in one(1) category shall constitute a rating of less than good." As stated within the Other Elements (Attendance and Punctuality) section of Ms. Armstrong's service rating, her attendance was unsatisfactory which resulted in an Overall Rating of Unsatisfactory. Ms. Armstrong's dismissal from State service during her initial working test period was based on the "Overall Evaluation" which outlined less than satisfactory (Unsatisfactory) performance in the area of Attendance and Punctuality.

Per the Social and Human Services (P-2) Bargaining Unit Agreement, Article 11, Section One (Please See Exhibit 9),

Tiana Armstrong
Case No: 0210456
Page 8

"The Working Test Period shall be deemed an extension of the examination process. Therefore, a determination of unsatisfactory performance during a Working Test Period shall be tantamount to a failure of the competitive examination."

4c  Michele Farieri, Social Services Operations Manager - WF
No Known Physical Disability

Carol Scherer, Eligibility Services Supervisor - WF
No Known Physical Disability

Lisa Owens, Personnel Officer 1 - BF
No Known Physical Disability

4d  Rudolph Jones, Director of Human Resources - BM
No Known Physical Disability

4e.  Please See Exhibit 11, Exhibit 13, Exhibit 14, Exhibit 15 & Exhibit 16

4f.  Please See Exhibit 17. Respondent is not aware of any existing physical disabilities affecting the individuals listed below. Per the PER 301 Form, Item #10 (Please See Exhibit 18), Complainant does not consider herself as disabled using the following definition " Do you have a physical or mental impairment that substantially limits one or more of your major life activities such as walking; seeing; hearing; speaking; breathing; learning; working; caring for oneself; or performing manual tasks."

| EMPLOYEE NAME | POSITION HELD | RACE/ COLOR/ SEX | ACTION TAKEN | IND. MAKING FINAL DECISION | POSITION HELD | RACE/ COLOR/ SEX |
|---|---|---|---|---|---|---|
| TIANA ARMSTRONG | SST | B/F | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| ALTON GRAY | CCT | B/M | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| HEATHER SCHORR | CCT | W/F | DROPPED DURING | R. JONES | DIR. OF HR | B/M |

Tiana Armstrong
Case No: 0210456
Page 9

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| ELIZABETH ETHIER (uses a wheelchair) | CCT | W/F | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| TONYA DALEY | SST | B/F | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| STEPHEN DUNNROWICZ | PLAN. ANALYST | W/M | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| RICHARD JENNINGS | DP OP SUP SPEC 2 | W/M | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| BRENDA MURPHY-ROSADO | INT/CLERK | H/F | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| HOLLY GENOVESE | UTIL. REV. NURSE | W/F | DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |

4g.   Please See Exhibit 19.

| EMPLOYEE NAME | POSITION HELD | RACE/ COLOR/ SEX | ACTION TAKEN | IND. MAKING FINAL DECISION | POSITION HELD | RACE/ COLOR/ SEX |
|---|---|---|---|---|---|---|
| TIANA ARMSTRONG | SST | B/F | 11-05-01 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| ALTON GRAY | CCT | B/M | 09-19-00 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| HEATHER SCHORR | CCT | W/F | 08-04-00 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| ELIZABETH ETHIER (mobility impaired, used a wheelchair) | CCT | W/F | 07-14-00 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |

Tiana Armstrong
Case No: 0210456
Page 10

| TONYA DALEY | SST | B/F | 04-12-01 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
|---|---|---|---|---|---|---|
| STEPHEN DUNNROWICZ | PLAN. ANALYST | W/M | 04-11-02 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| RICHARD JENNINGS | DP OP SUP SPEC 2 | W/M | 04-25-02 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| BRENDA MURPHY-ROSADO | INT/CLERK | H/F | 03-05-02 DROPPED DURING WTP | R. JONES | DIR. OF HR | B/M |
| HOLLY GENOVESE | UTIL. REV. NURSE | W/F | 08-09-01 DROPPED DURING WTP | R. JONES | DIR. OF HR | BM |

Tiana Armstrong
Case No: 0210456
Page 11

5a.  (Six) While in the Central Office of the Department of Social Services for CORE training, Complainant had a discussion regarding the classification issue with Ms. Marshall,(BF) Personnel Officer 2 of the Central Office Human Resources Division. Ms. Marshall advised Complainant that she was qualified for the level of Connecticut Careers Trainee, however, she (Ms. Marshall) did not have jurisdiction over the North Central Region. Ms. Marshall advised Complainant that she should discuss the matter with the North Central Region's Human Resources Unit.

Ms. Marshall shared Complainant's classification concerns with the North Central Region's Human Resources Division. At that time, Ms. Marshall was reminded of the SEBAC requirements and the North Central Region's decision to hire Complainant at the level of Social Services Trainee. During the conversation, it was mentioned that it might be possible to reassign Complainant to the position of Connecticut Careers Trainee once SEBAC had been cleared. Ms. Marshall subsequently advised Complainant of that possibility and that the matter would be handled by North Central Region's Human Resources Division. At no time did Complainant discuss the classification issues with the North Central Region's Human Resources Unit, nor did she receive formal notification of reclassification from Social Services Trainee to Connecticut Careers Trainee.

It should also be noted that at no time did Ms. Marshall indicate that Ms. Armstrong had complained of discrimination nor had she filed a formal complaint with the Central Office Human Resources Division. Further, there is no complaint of discrimination on file with the Agency's Affirmative Action Division.

6.  As of 6-29-01
    Connecticut Careers Trainee        $1,274.26 Gross Biweekly
    Eligibility Services Worker         $1,546.02 Gross Biweekly

## Oath
### State of Connecticut
### (City of Hartford)
### County of Hartford

Date: June 28, 2002

Personally appeared ___Mary D Priestman___ and made oath to the
Mary D. Priestman

Truth of the matters attributed to her in the foregoing answer to the CHRO Complaint 0210456

Brenda Fanell
~~Notary Public~~ Commissioner of Superior Court

~~Commission expires~~

# CERTIFICATION

I certify that a copy of these materials was sent registered mail to the following person on 6/28/02.

Tiana Armstrong
6 Alford Drive
Windsor, CT 06095

*Mary D. Priestman*
Mary D. Priestman
Affirmative Action Administrator